**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ASK LLP and ANDREWS & HIGGINS,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**JIM HARRIS LAW, PLLC d/b/a JAMES HARRIS LAW, PLLC; and DAMON J. BALDONE & ASSOCIATES,**<br><br>**Defendants.** | **Case No. 26-cv-__________**<br><br>**Complaint** |

Plaintiffs ASK LLP ("ASK") and Andrews & Higgins ("A&H") (together, "Plaintiffs"), by their undersigned counsel and for their Complaint against Defendants Jim Harris Law, PLLC, d/b/a James Harris Law, PLLC ("JHL"); and Damon J. Baldone & Associates ("Baldone") (together, "Defendants"); allege as follows:

## NATURE OF THE ACTION

1. This case arises out of brazen violations of clear contracts by two law firms that allowed their greed for legal fees to override their written promises.

2. Plaintiffs ASK and A&H are law firms that for decades have advocated on behalf of their clients in a wide range of mass-tort cases where Plaintiffs represent victims of institutional misconduct and seek to hold accountable perpetrators of widespread wrongdoing.

3. In this instance, Plaintiffs agreed to represent many clients against the Boy Scouts of America and associated entities ("BSA") in claims arising from BSA's decades-long history of sexual abuse (the "BSA PI Claims").

4. As part of these representations, Plaintiffs agreed to act as co-counsel with JHL and Baldone "for all personal injury cases" involving BSA in which JHL or Baldone had been retained as counsel.

5. Plaintiffs' agreement to act as co-counsel was crucial to Defendants' ability to handle claims against BSA. Plaintiffs have particular expertise not just in mass-tort litigation, but also in mass-tort litigation in bankruptcy, where the BSA matter was pending.

6. In developing and litigation the BSA PI Claims, Plaintiffs expended significant time, effort, and resources that inured to the benefit of Defendants and their clients.

7. Despite the clear language of the contracts between Plaintiffs and Defendants, however, JHL and Baldone surreptitiously retained hundreds of additional clients to pursue BSA PI Claims without providing Plaintiffs any opportunity to act as co-counsel.

8. Defendants' intentions are now obvious. They sought to gain access to, and to benefit from, the significant amount of work performed by Plaintiffs, while trying to keep the entirety of the legal fees for themselves in clear violation of their agreements.

9. Plaintiffs therefore bring this action to enforce their agreements and to recover damages owed to them as a result of Defendants' misconduct.

## PARTIES

10. Plaintiff ASK LLP is a limited-liability partnership organized and headquartered in Minnesota with equity partners located in Minnesota and New York. ASK also maintains an office in New York, New York.

11. Plaintiff Andrews & Higgins is a professional law corporation organized and headquartered in California with partners domiciled in California.

12. On information and belief, Defendant Jim Harris Law, PLLC, d/b/a James Harris Law, PLLC, is an active professional limited-liability company organized and headquartered in the State of Washington.

13. On information and belief, JHL's principal, James Harris, resides in the State of Washington. Mr. Harris is an attorney admitted to practice in the State of Washington, license number 25413.

14. On information and belief, Defendant Baldone is a professional law corporation organized and headquartered in Louisiana, also operating as Damon J. Baldone, A Professional Law Corporation.

## JURISDICTION AND VENUE

15. The equity partners of Plaintiff ASK are domiciled in Minnesota and New York.

16. Therefore ASK is a citizen of Minnesota and New York for diversity purposes.

17. The partners of Plaintiff A&H are all domiciled in California.

18. Therefore A&H is a citizen of California for diversity purposes.

19. The citizenship of the members of Defendant JHL, other than its principal Mr. Harris, is unknown to Plaintiffs.

20. On information and belief, Mr. Harris is domiciled in the State of Washington.

21. Therefore, on information and belief, Mr. Harris is a citizen of Washington for diversity purposes and JHL likewise is a citizen of Washington for diversity purposes.

22. On information and belief, Baldone is a citizen of Louisiana for diversity purposes.

23. On information and belief, therefore, complete diversity exists between Plaintiffs and Defendants.

24. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated, in this District.

25. For example, in order to advance the BSA bankruptcy proceedings to a successful conclusion for clients with BSA PI Claims, Plaintiff A&H participated in numerous mediation sessions that took place in New York, New York.

26. In addition, a substantial amount of the work performed by Plaintiff ASK took place in New York.

27. Further, Plaintiffs' agreements with JHL and with Baldone both contained choice-of-law provisions that selected New York law to govern the contracts.

## FACTUAL ALLEGATIONS

### A. The Boy Scout Litigations

28. Facing approximately 275 lawsuits and 1400 other potential claims by adults who had been abused as children during scouting activities, the Boy Scouts of America filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on February 18, 2020. *See In re: Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del.) (the "BSA Bankruptcy").

29. The BSA Bankruptcy petition set up a complex, dynamic litigation that included thousands of victims of grievous wrongs, a congressionally chartered charity and its nationwide affiliates and local councils, the charity's various primary and excess insurers, and other organizations that were facing related liabilities, not to mention trade creditors, the United States Trustee, and the Bankruptcy Court for the District of Delaware.

30. In March 2020 the Office of the United States Trustee formed two committees: a Committee of Unsecured Trade Creditors and a Committee of Tort Claimants (the latter

committee, the "TCC"). In April 2020, the Bankruptcy Court appointed a legal representative for future claimants. An *ad hoc* committee of Local Councils also formed early in the case.

31. In March 2020 and June 2020, Plaintiffs entered into nearly identical contracts, each titled "Association of Counsel and Fee-Sharing Agreement," with Defendants Baldone and JHL.

32. The fee-sharing agreement between Plaintiffs and Baldone was signed on March 14, 2020 (the "Baldone Fee-Sharing Agreement").

33. The agreement between Plaintiffs and JHL was signed on June 2, 2020 (the "Harris Fee-Sharing Agreement," and together with the Baldone Fee-Sharing Agreement, the "Fee-Sharing Agreements," which are both attached hereto as Exhibit A).

**B. The Baldone Fee-Sharing Agreement**

34. According to a recital in the Baldone Fee-Sharing Agreement, Baldone was "counsel for a number of individuals seeking to file claims in the BSA Entities' bankruptcy actions."

35. According to another recital, Baldone stated that it sought "to associate with" Plaintiffs owing to their "expertise in the areas of bankruptcy and mass tort litigation."

36. In its first substantive paragraph, therefore, the Baldone Fee-Sharing Agreement provided that Plaintiffs and Baldone "agree[d] to act as co-counsel for *all personal injury cases involving abuse and the BSA Entities*, for which Baldone has been retained as counsel (the "BSA PI Claims"). (Baldone Fee-Sharing Agreement at 1 ¶ 1 (italics added).)

37. The agreement went on to divide responsibilities between Baldone and Plaintiffs, providing that Baldone would "perform the initial client intake and investigation" and that Plaintiffs would "jointly perform all claim management," including "preparing and filing Proofs of Claim and PI claim packets as needed." (Baldone Fee-Sharing Agreement at 1 ¶ 3.)

38. Importantly, the Baldone Fee-Sharing Agreement further provided that "Attorneys' Fees from a BSA PI Claim will be divided as follows: (i) 40% to Baldone and (ii) 60% to [Plaintiffs] (jointly)." (*Id.*)

39. The Baldone Fee-Sharing Agreement contained exclusivity language that states:

> *Baldone agrees that unless this Agreement is modified, it will not enter into any similar agreement related to the BSA PI Claims*. The Parties further agree that they shall disclose the existence and the terms of this Agreement to any client that the Parties are representing in a BSA PI Claim, including the division of fees and the amount of work to be performed by each Party. The Parties further agree that they shall obtain informed consent from each BSA PI Claim client as to the division of fees and the relationship between Baldone on the one hand and [Plaintiffs] on the other hand.

(Baldone Fee-Sharing Agreement at 2 ¶ 6 (italics added).)

40. Baldone and Plaintiffs further agreed, "with regards to the Proof of Claim forms filed on behalf of BSA PI Claimants," that (a) the forms would list a lockbox managed by Plaintiffs as the address to which payments to creditors should be sent and (b) creditor notices, including plan-confirmation ballots, would be sent to Plaintiffs for execution. (Baldone Fee-Sharing Agreement at 2 ¶ 7.)

41. Lastly, Baldone "agree[d] to share all available client data on the BSA PI Claims with [Plaintiffs]." (Baldone Fee-Sharing Agreement at 2 ¶ 8.)

42. Damon J. Baldone executed the Baldone Agreement for "Damon J. Baldone & Associates" as "Its: Partner" on March 12, 2020. (Baldone Agreement at 4 (signature block).)

**C. The Harris Fee-Sharing Agreement**

43. Likewise, according to the recitals in the Harris Fee-Sharing Agreement, JHL was "counsel for a number of individuals seeking to file claims in the BSA Entities' bankruptcy actions."

44. According to another recital, JHL sought "to associate with" Plaintiffs owing to their "expertise in the areas of bankruptcy and mass tort litigation."

45. In its first substantive paragraph, the Harris Fee-Sharing Agreement provided that Plaintiffs and JHL "agree[d] to act as co-counsel for *all personal injury cases involving abuse and the BSA Entities*, for which JHL has been retained as counsel (the "BSA PI Claims"). (Harris Fee-Sharing Agreement at 1 ¶ 1 (italics added).)

46. The Harris Fee-Sharing Agreement went on to divide responsibilities between JHL and Plaintiffs, providing that JHL would "perform the initial client intake and investigation" and that Plaintiffs would "jointly perform all claim management," including "preparing and filing Proofs of Claim and PI claim packets as needed." (Harris Fee-Sharing Agreement at 1 ¶ 3.)

47. Likewise, and importantly, the Harris Fee-Sharing Agreement further provided that "Attorneys' Fees from a BSA PI Claim will be divided as follows: (i) 40% to [JHL] and (ii) 60% to [Plaintiffs] (jointly)." (*Id.*)

48. The Harris Fee-Sharing Agreement contained exclusivity language that states:

> *[JHL] agrees that unless this Agreement is modified, it will not enter into any similar agreement related to the BSA PI Claims*. The Parties further agree that they shall disclose the existence and the terms of this Agreement to any client that the Parties are representing in a BSA PI Claim, including the division of fees and the amount of work to be performed by each Party. The Parties further agree that they shall obtain informed consent from each BSA PI Claim client as to the division of fees and the relationship between [JHL] on the one hand and [Plaintiffs] on the other hand.

(Harris Fee-Sharing Agreement at 2 ¶ 6 (italics added).)

49. JHL and Plaintiffs further agreed, "with regards to the Proof of Claim forms filed on behalf of BSA PI Claimants," that (a) the forms would list a lockbox managed by Plaintiffs as the address to which payments to creditors should be sent and (b) creditor notices, including plan-confirmation ballots, would be sent to Plaintiffs for execution. (Harris Fee-Sharing Agreement at 2 ¶ 7.)

50. Lastly, JHL "agree[d] to share all available client data on the BSA PI Claims with [Plaintiffs]." (Harris Fee-Sharing Agreement at 2 ¶ 8.)

51. Defendant Harris executed the Harris Fee-Sharing Agreement for "James Harris Law, PLLC" as "Its: Partner" on June 2, 2020. (Harris Fee-Sharing Agreement at 4 (signature block).)

**D. Defendants' Breaches of Their Fee-Sharing Agreements**

52. Unbeknownst to Plaintiffs, both Baldone and JHL went on to breach nearly every one of the contractual provisions quoted above.

53. On information and belief, Baldone has filed at least 450 Proofs of Claim in the BSA bankruptcy cases, without Plaintiffs' knowledge, based on individuals' BSA PI Claims.

54. On information and belief, JHL has filed at least 400 Proofs of Claim in the BSA bankruptcy cases, without Plaintiffs' knowledge, based on individuals' BSA PI Claims.

55. It appears that Baldone and JHL each now seek to receive fees on successful BSA PI Claims without intending to share any portion of those fees with Plaintiffs, much less the 60 percent required by the Fee-Sharing Agreements.

56. When Plaintiffs learned of Baldone's violations of the Baldone Fee-Sharing Agreement, Plaintiffs demanded that Baldone comply with its contractual obligations under that agreement.

57. Baldone refused to do so.

58. When Plaintiffs learned of JHL's violations of the Harris Fee-Sharing Agreement, Plaintiffs demanded that JHL comply with its contractual obligations under the Agreement.

59. JHL refused to do so.

**E. Plaintiffs' Legal Services in the BSA Bankruptcy, Driving the Case to a Successful Reorganization, Including the $2.4 Billion Scouting Settlement Trust From Which Baldone and JHL Are Now Receiving Legal Fees**

60. BSA's reorganization was hotly contested. The debtors, their insurers, their affiliates, other nonprofit organizations, and abuse victims all attempted to advance or to defend consequential claims and enormous liabilities that had bet-the-entity stakes. The equitable resolution of the bankruptcy proceedings was critical to tens of thousands of individual claimants achieving a measure of accountability, receiving partial compensation, reaching some degree of closure, and moving on with their lives.

61. Given Plaintiffs' expertise in mass torts and related bankruptcy litigations, Plaintiffs evaluated the status of the BSA bankruptcy and determined that an approach was needed different from the one taken by the Official Committee of Tort Claimants ("TCC").

62. Therefore Plaintiffs (along with other plaintiffs'-side firms) formed the Coalition of Abused Scouts for Justice (the "Coalition").

63. The firms in the Coalition together represented nearly 75 percent of the individual creditors who had BSA PI Claims. Thus the Coalition had potential leverage in the plan-confirmation process.

64. Plaintiffs used that leverage—and Plaintiffs did so in ways that materially benefited Baldone, JHL, and their other BSA PI Claim clients of whom Plaintiffs were unaware.

65. In particular, the Coalition and the Future Claimants' Representative (appointed by the Bankruptcy Court) negotiated settlements with BSA's insurers—Hartford, Century, Chubb, Zurich, and Clarendon—and also with the BSA itself, certain BSA-affiliated local councils, and the United Methodists.

66. The settlements that Plaintiffs negotiated resulted in commitments of more than $2.4 billion to fund a Scouting Settlement Trust contemplated by the third modified, fifth amended reorganization plan.

67. Plaintiffs' legal services that led to the funding of the Scouting Settlement Trust are further detailed in a declaration of Anne Andrews, attached as Exhibit B.

68. Only after all the legal work that the Andrews Declaration describes was the plan of reorganization confirmed.

69. The Scouting Settlement Trust was established and as of August 2, 2026, it has disbursed $1.24 billion in claims—including claims that belong to BSA PI Claim clients that Baldone and Plaintiffs, and that JHL and Plaintiffs, represented together as co-counsel under the Fee-Sharing Agreements.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

70. Plaintiffs incorporate by reference all foregoing allegations as if stated fully here.

71. By signing the Fee-Sharing Agreements, Baldone and Plaintiffs, and JHL and Plaintiffs, entered into contracts pursuant to which Plaintiffs agreed to act as co-counsel for personal-injury cases involving abuse and the BSA Entities for which Baldone or JHL was retained as counsel, to advise Baldone and JHL on all developments in the BSA Entity bankruptcy actions, to share with Baldone or JHL permitted claims-criteria information, to make vendors and third parties available to Baldone or JHL, and to review work product for BSA PI Claims; and Baldone and JHL each agreed that Plaintiffs would jointly receive 60 percent of the Attorneys' Fees from BSA PI Claims.

72. Plaintiffs have fulfilled their obligations under the Fee-Sharing Agreements.

73. In particular, Plaintiffs have performed under the Fee-Sharing Agreements by paying over to Defendants legal fees.

74. Baldone breached the Baldone Fee-Sharing Agreement, and JHL breached the Harris Fee-Sharing Agreement, by, among other things, soliciting plaintiffs who had BSA PI Claims; entering into attorney-client relations with such clients; failing to inform Plaintiffs of those clients or their BSA PI Claims and failing to inform BSA PI Claimant clients of the contractual relationships with Plaintiffs; without Plaintiffs' knowledge, filing Proofs of Claim that did not show Plaintiffs' lockbox as the address to which payments to creditors would be sent or either Plaintiff as the addressee for notices to creditors, including plan-confirmation ballots; and receiving fees on such BSA PI Claims without paying Plaintiffs the agreed-upon 60 percent share of the fees.

75. As a result of Baldone's and JHL's breaches, Plaintiffs have been damaged in an amount to be determined at trial but not less than $1.5 million for breach of the Baldone Fee-Sharing Agreement and $1.9 million for breach of the Harris Fee-Sharing Agreement, together with interest at the applicable rates.

## SECOND CAUSE OF ACTION
**(Breach of Contract Implied in Fact)**

76. Plaintiffs incorporate by reference all foregoing allegations as if stated fully here.

77. Plaintiffs and Baldone, and Plaintiffs and JHL, had an enforceable implied-in-fact contract under which Balone or JHL was obligated to receive only 40 percent of the Attorney's Fees for BSA PI Claims and Plaintiffs jointly were entitled to receive 60 percent. The specific terms of the contract were that Plaintiffs would act as co-counsel with respect to the BSA PI Claims, advise the Defendant on all developments in the BSA Entity bankruptcy actions, share with Baldone or JHL permitted claims-criteria information, make vendors and third parties

available to Baldone or JHL, and review work product for BSA PI Claims; and Plaintiffs would jointly receive 60 percent of the Attorneys' Fees from BSA PI Claims.

78. The terms of the implied-in-fact contract were documented in written and oral communications between Plaintiffs and Baldone and between Plaintiffs and JHL.

79. Baldone demonstrated acceptance and acquiesced to the agreement by accepting legal fees paid over by Plaintiffs under the agreement.

80. JHL demonstrated acceptance and acquiesced to the agreement by accepting fees legal paid over by Plaintiffs under the agreement.

81. Plaintiffs performed their obligations under the agreement by acting as co-counsel, advising Defendants on developments in the BSA Entity bankruptcy cases, sharing permitted claims-related information with Defendants, making vendors and third-parties available to Defendants, and reviewing work product for BSA PI Claims.

82. Baldone and JHL have each received the benefits of the agreement as a result of Plaintiffs' performance, as described in the immediately preceding paragraph. For the clients whom JHL or Baldone engaged on its own without informing Plaintiffs, however, JHL or Baldone has each kept 100 percent of the attorneys' fees and Plaintiffs have received nothing.

83. Plaintiffs have been damaged by Baldone's failure to pay. On information and belief, Baldone owes Plaintiffs $1.5 million, together with interest at the legal rates.

84. Plaintiffs have been damaged by JHL's failure to pay. On information and belief, JLH owes Plaintiffs $1.9 million, together with interest at the legal rates.

## **THIRD CAUSE OF ACTION**
**(Quantum Meruit)**

85. Plaintiffs incorporate by reference all foregoing allegations as if stated fully here.

86. As described above, Plaintiffs in good faith rendered legal services as co-counsel with Defendants, and provided Defendants other benefits, in connection with BSA PI Claims, for which Plaintiffs have not been paid. The fair and reasonable value of such services is to be proved at trial.

87. Each of Baldone and JHL, without objection, knowingly and willingly accepted benefit of those legal services rendered by Plaintiffs.

88. Plaintiffs' work was instrumental to Defendants' litigation of all the BSA PI Claims—those that Plaintiffs knew about and those that were not disclosed to Plaintiffs.

89. Plaintiffs' contingency fee is reasonable and is comparable to the fees charged by other leading firms in the United States in similar mass-tort matters in bankruptcy proceedings.

90. Each of Baldone and JHL understood that Plaintiffs expected to be paid for the legal services and other benefits that Plaintiffs provided in connection with the BSA PI Claims.

91. In rendering such legal services, and based on Baldone's and JHL's conduct, Plaintiffs reasonably expected and continue to expect to be paid for the value of the legal services rendered as co-counsel in connection with the BSA PI Claims, disclosed and undisclosed.

92. Accordingly, Plaintiffs seek recovery in quantum meruit.

93. As a result of the foregoing, Plaintiffs have been damaged by Baldone in an amount to be proven at trial, and judgment should be rendered against Baldone in favor of Plaintiffs in that amount, plus interest.

94. As a result of the foregoing, Plaintiffs have been damaged by JHL in an amount to be proven at trial, and judgment should be rendered against JHL in favor of Plaintiffs in that amount, plus interest.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

95. Plaintiffs incorporate by reference all foregoing allegations as if stated fully here.

96. Plaintiffs conferred a benefit on each of Baldone and JHL by providing legal and other services in connection with the BSA PI Claims.

97. Each of Baldone and JHL knowingly and voluntarily accepted the benefit of Plaintiffs' services.

98. Baldone and JHL both materially benefited from the legal and other services that Plaintiffs performed in connection with the BSA Entities and their bankruptcy cases.

99. Plaintiffs have been injured and harmed by Defendants' unlawful actions.

100. Under the circumstances, it is unjust for Baldone or JHL to retain the benefit of Plaintiffs' services without payment.

101. Baldone's refusal and JHL's refusal to pay for the benefits conferred on them have resulted in, and are likely to further result in, unjust enrichment of or unjust benefit to Baldone and JHL at the expense of Plaintiffs, requiring restitution in an amount to be proven at trial, plus interest.

**FIFTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

102. Plaintiffs incorporate by reference all foregoing allegations as if stated fully here.

103. The Fee-Sharing Agreements are contractual obligations.

104. Implied in the Fee-Sharing Agreements was a covenant that Baldone and JHL would act in good faith towards, and would deal fairly with, Plaintiffs.

105. Put another way, the Fee-Sharing Agreements include a promise that Baldone and JHL would do nothing to destroy or injure the right of Plaintiffs to receive the benefits of the contracts.

106. Among the promises that Plaintiffs were justified in believing that Baldone and JHL had made to them was a promise that in handling any claim of abuse in connection with any BSA Entity, Baldone and JHL would inform Plaintiffs of the claim and act as co-counsel with Plaintiffs.

107. A reasonable person in Plaintiffs' position would have understood that Baldone and JHL would not conceal BSA PI Claims in order to deprive Plaintiffs of their 60 percent interest in any resulting fee.

108. As a result of Baldone's and JHL's breaches of the implied covenant, Plaintiffs have jointly been damaged in an amount to be proven at trial, plus interest.

## PRAYER FOR RELIEF

109. WHEREFORE Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants as follows:

a. judgment for Plaintiffs and against Baldone in the amount of $1,500,000, plus pre-judgment and post-judgment interest thereon;

b. judgment for Plaintiffs and against JHL in the amount of $1,900,000, plus pre-judgment and post-judgment interest thereon;

[*remainder of this page intentionally left blank*]

c. an award to Plaintiffs of their expenses incurred in bringing this action, including court costs and reasonable attorneys' fees; and

d. such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 2, 2026

FRANKFURT KURNIT KLEIN + SELZ PC

By: */s/ Tyler Maulsby*
Tyler Maulsby
Jeremy Bates

28 Liberty Street 35th Floor
New York, New York 10005
(212) 980-0120
tmaulsby@fkks.com
jbates@fkks.com

*Attorneys for Plaintiffs*
*ASK LLP and Andrews & Higgins*